**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD PLEIMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:23-CV-130 RLW |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Ronald Pleimann brings this action pursuant to 42 U.S.C.  §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.  For the reasons that follow, the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Memorandum and Order.

### I.  Procedural History

Plaintiff filed his application for DIB on December 13, 2020.  (Tr. 54, 167-69).  Plaintiff alleged that he had been unable to work since June 12, 2020, due to rib fractures, a healing thoracic spine fracture, enlarged lymph nodes, and arthritis in the neck. (Tr. 143). Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff and counsel appeared for an initial hearing on October 28, 2021. (Tr. 29-53).  Plaintiff testified concerning his disability, daily activities, functional limitations, and past

---

[1]Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

work.  Id.  The ALJ also received testimony from vocational expert ("VE") Vanessa May.  Id.  On January 24, 2022, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 11-23). On February 23, 2022, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 164-66).  On December 7, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5).  Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  See 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence in the record as a whole.  Specifically, Plaintiff argues that the ALJ's findings regarding Plaintiff's residual functional capacity, and in particular his supposed ability to lift and carry up to 50 pounds occasionally and 25 pounds frequently, are not supported by the medical evidence.[2]  Plaintiff argues the ALJ failed to address lifting restrictions placed on him by his medical providers, and she did not identify medical evidence indicating Plaintiff could perform medium work despite his impairments.  Plaintiff requests that the decision of the Commissioner be reversed, and the matter be remanded for an award of benefits or for further evaluation.

## II.  Administrative Record

Plaintiff worked as a sheet metal worker for nearly 35 years.  On June 12, 2020, Plaintiff tripped on a wet deck and fell down three stairs, falling backwards. (Tr. at 368). He presented to the ER where tests and scans revealed he had fractured his eighth, ninth, and tenth ribs, had a mild chronic T6 compression deformity, and mild cervical spondylosis. (Tr. at 326, 328, 332, 368). Later imaging showed his rib fractures were "mildly displaced." (Tr. at 329-330). Initial x-rays of

---

[2]Plaintiff only disputes the ALJ's decision with regard to his physical limitations. The Court, therefore, will limit its discussion to the ALJ's evaluation of Plaintiff's ability to perform work in light of his physical impairments.

Plaintiff's shoulder and elbow did not reflect any abnormalities. (Tr. at 333-334). An MRI performed on a later date indicated he had several impairments related to his right, dominant shoulder, including diffuse rotator cuff tendinopathy; low-grade partial-thickness articular-sided tearing of the subscapularis, anterior supraspinatus; small high-grade partial-thickness tearing involving the junctional fibers; and mild osteoarthritis. (Tr. at 590).

During his initial visit to the ER in June 2020, Plaintiff was prescribed pain medication, including hydrocodone, and sent home with instructions to follow up with his primary care provider. (Tr. at 368).  Plaintiff's recovery was slower than expected.  In 2020, during visits with his medical providers, Plaintiff repeatedly reported significant pain in his ribs, abdomen, back and shoulder. (See Tr. at 297, 309-310, and 368).   On September 1, 2020, Mark Blucher, M.D., a primary care provider, advised Plaintiff that he wait another three to six months to give time for the natural healing process to occur before pursuing more intensive treatment.  On November 12, 2020, Plaintiff returned to Charles Tadros, M.D., another primary care provider and reported ongoing pain symptoms in his abdomen and right shoulder. (Tr. at 305-306).  Dr. Tadros increased Plaintiff's prescribed dose of gabapentin and referred him to pain management. (Tr. at 305-306).

Plaintiff was seen by Kevin Coleman, M.D., at the pain management clinic on December 1, 2020.  (Tr. at 297). Dr. Coleman noted Plaintiff had tried anti-inflammatories, hydrocodone, gabapentin, and braces, all "without much benefit." (Tr. at 297). Dr. Coleman also noted that Plaintiff reported that any type of activity produced excruciating pain. (Tr. at 297). Dr. Coleman's physical exam during this visit reflected Plaintiff was under a "great deal of pain [and] discomfort" in the rib area.  (Tr. at 298).

On February 24, 2021, Plaintiff was seen by Joseph Scerba, P.A., at an orthopedic clinic for evaluation of his shoulder injury. (Tr. at 652).   A physical examination revealed reduced shoulder range of motion, tenderness to palpation, and mildly positive impingement signs, but he

demonstrated full (5/5) strength. (Tr. at 653). X-rays of Plaintiff's right shoulder showed mild degenerative changes of the glenohumeral joint with mild to moderate changes of the AC joint. (Tr. at 654). P.A. Scerba recommended physical therapy and activity modification. Specifically, Plaintiff was instructed to avoid "heavy lifting" and "repetitive activities at or above shoulder level." (Tr. at 654, 656). On April 7, 2021, Plaintiff returned to P.A. Scerba, who noted physical therapy and pain medication had provided Plaintiff "little if any benefit" since his last visit. (Tr. at 659, 656). Plaintiff continued to suffer pain in his shoulder, with attempts at movement causing sharp pain. (Tr. at 659). A physical exam showed slightly reduced range of motion in the shoulder, mild tenderness, and mildly positive impingement signs. (Tr. at 659-660). He continued to demonstrate full (5/5) muscle strength. P.A. Scerba ordered an MRI and instructed Plaintiff to continue with activity modifications. (Tr. at 660).

An MRI taken on April 14, 2021, showed a low-grade partial-thickness articular sided tearing of the subscapularis, anterior supraspinatus; and junctional fibers with superimposed small high-grade partial-thickness tear involving the junctional fibers. (Tr. at 590). The MRI also identified mild acromioclavicular joint osteoarthritis. (Tr. at 590). P.A. Scerba diagnosed Plaintiff with right shoulder adhesive capsulitis with multiple partial thickness rotator cuff tears and tendinopathy. (Tr. at 663). P.A. Scerba recommended an ultrasound guided cortisone injection, as well as continued physical therapy. Plaintiff was again instructed to avoid "heavy lifting." (Tr. at 664).

Plaintiff was seen by Jared Scheifer, P.A. on May 7, 2021, and complained of ongoing pain in his back, ribs, and shoulder. (Tr. at 604). He reported that he had attempted to return to work but was unable to complete a single day due to extreme pain caused by the work. (Tr. at 604). A physical examination showed right shoulder tenderness, decreased strength, and decreased range of motion.

Plaintiff returned to P.A. Scerba on June 14, 2021, and reported minimal improvement with the cortisone injection. He stated that he experienced little benefit from six weeks of physical therapy and felt his shoulder pain was worsening. (Tr. at 666). A physical examination reflected mild tenderness, reduced range of motion, and signs of impingement. (Tr. at 666). P.A. Scerba referred Plaintiff to an orthopedic surgeon. (Id.) Again, Plaintiff was instructed to avoid "heavy lifting" and repetitive activities at or above the shoulder level. (Tr. 667).

On July 12, 2021, Plaintiff met with Benjamin Zmistowski, M.D., an orthopedic surgeon. (Tr. at 670). A shoulder examination showed reduced range of motion and positive impingement signs. (Tr. at 670). The doctor noted Plaintiff's treatment history had not helped his shoulder symptoms. (Tr. at 670). Dr. Zmistowski recommended a subacromial injection. (Tr. at 670). On August 23, 2021, Plaintiff returned to Dr. Zmistowski, reporting 30 percent improvement in pain from the subacromial injection performed at the last visit. (Tr. at 674). Despite this improvement, Dr. Zmistowski noted that Plaintiff's "pain persists as well as his dysfunction." (Tr. at 674). The doctor also noted that Plaintiff's recent injection might adversely interfere with surgery. Accordingly, Dr. Zmistowski recommended temporarily continuing conservative treatment measures with the goal of "moving towards considering surgical intervention." (Tr. at 674).

On August 24, 2021, P.A. Schiefer completed a Medical Source Statement regarding Plaintiff's physical functioning. (Tr. at 628-630). P.A. Schiefer indicated Plaintiff could never lift 20 pounds, among other limitations. (Tr. at 629).

On September 20, 2021, Plaintiff returned to Dr. Zmistowski and reported ongoing pain. Dr. Zmistowski noted Plaintiff had undergone "extensive physical therapy at this point," and "has had prior steroid injections." (Tr. at 731). Dr. Zmistowski also noted Plaintiff's impairments were "significantly affecting his quality of life." (Tr. at 731). Dr. Zmistowski recommended surgical intervention on Plaintiff's right shoulder in early November. (Tr. at 731).

### *III. Legal Standard*

To be eligible for DIB under the Social Security Act, plaintiff must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities. If the claimant's impairment is not severe, then he or she is not disabled. Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  Id. (internal quotation marks and citations omitted.  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently."  KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

### IV.  The ALJ's Decision

In a decision dated January 24, 2022, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity since June 12, 2020; Plaintiff has the severe impairments of status-post factures of the eighth, ninth, and tenth ribs, and mild osteoarthritis of the right shoulder (Tr. at 14); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 17).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform medium work as defined in 20 C.F.R. § 404.1567(c) "except he can frequently reach overhead with his right upper extremity." (Tr. 16).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [ ] he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

At the fourth step, the ALJ found Plaintiff was able to perform his past relevant work as a sheet metal worker. (Tr. 22).   More specifically, she wrote:

> The vocational expert testified that the demands of [Plaintiff]'s past relevant work as a heavy-duty, skilled sheet metal worker, DOT# 804.281-010 do not exceed his residual functional capacity.  In comparing [Plaintiff]'s residual functional capacity with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform it as it is generally performed at the medium-duty exertional level in the national economy.

(Tr. 22).  At the end of her analysis, the ALJ concluded Plaintiff was not disabled.  (Tr. 23).

## V.  Discussion

In his Brief in Support of Complaint, Plaintiff argues the ALJ did not make her RFC determination based on substantial evidence in the record.   Plaintiff faults the ALJ for failing to evaluate the medical opinion of his treating medical provider properly.  Plaintiff also faults to the ALJ for failing to identify medical evidence to support her conclusion that Plaintiff could perform medium work, in particular his supposed ability to lift 50 pounds occasionally and 20 pounds frequently.  Defendant responds that the ALJ properly evaluated the medical opinions and findings under the new regulations.  Defendant further argues that in assessing Plaintiff's RFC, the ALJ correctly found that his reported activities were inconsistent with a disability determination.

### A.    RFC Standard and Applicable Law

RFC is what a claimant can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945.   The RFC is a

function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis.  SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).  "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner."  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).  It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his or her limitations.  Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Pearsall, 274 F.3d at 1217.  According to the Eighth Circuit, "Ultimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'"  Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (quoting Combs, 878 F.3d at 646); see also Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (ALJ's RFC assessment must be supported by medical evidence).  Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional.  See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (some medical evidence must support the determination of the claimant's RFC).  An ALJ's RFC determination should be upheld if it is supported by substantial evidence in the record.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

It is the claimant's burden to establish his or her RFC.  Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004).  However, the ALJ has an independent duty to develop the record, despite the claimant's burden.  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The ALJ must neutrally develop the facts.").  "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'"  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (quoting Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)).  In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative

examination of the claimant, before rendering a decision. See 20 C.F.R. §§ 404.1519a(b), 416.945a(b).

For claims like Plaintiff's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a). An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies."  20 C.F.R. § 404.1520c(a)-(c).

Under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how she considered the factors of supportability and consistency in her decision.[3]  20 C.F.R. § 404.1520c(b)(2).  An ALJ may, but is not required to explain how she considered the remaining factors.  Id.; see also Nolen v. Kijakazi, 61 F.4th 575, 577 (8th Cir.

---

[3]"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

2023) (having addressed the supportability and consistency of the doctor's medical opinion, "the ALJ did not need to discuss other factors").

**B.      The ALJ's RFC Determination for Plaintiff's Physical Impairments Is Not Supported by Substantial Evidence.**

1.      <u>The ALJ's valuation of medical opinions and treatment records</u>

Plaintiff argues that the ALJ failed to consider the medical opinion of P.A. Scerba, who treated Plaintiff for his musculoskeletal impairments on different occasions and repeatedly instructed Plaintiff to "avoid heavy lifting."  (Tr. at 654, 656, 664, 667-668).  Despite this lifting restriction, which Plaintiff contends was a medical opinion about his physical abilities, the ALJ found Plaintiff was capable of lifting up to 50 pounds occasionally and 25 pounds frequently.

Plaintiff was referred to P.A. Scerba by his primary care provider for specialty treatment at an orthopedic clinic in February 2021.   P.A. Scerba ordered and reviewed diagnostic imaging, including x-rays and an MRI, of Plaintiff's shoulder. <u>Id.</u> He also administered physical examinations at each visit. <u>Id.</u> After evaluating Plaintiff's condition, P.A. Scerba formulated a treatment plan at the conclusion of each of Plaintiff's visits. (See Tr. at 654, 656, 660, 661, 667, 668). In treatment notes, P.A. Scerba stated multiple times in the spring and summer of 2021 that Plaintiff was to avoid heavy lifting and repetitive activities at or about the shoulder level. (Tr. 656, 660, 664, 668).

P.A. Scerba is a treating medical source, and his instruction to "avoid heavy lifting," constituted a statement restricting Plaintiff's ability to carry out physical demands, a point Defendant does not dispute. 20 C.F.R. § 414.1513.   Therefore, the ALJ should have evaluated P.A. Scerba's medical opinion under 20 C.F.R. § 404.1520c to determine the "persuasiveness" of the opinion.  The ALJ was required to articulate whether the medical opinion regarding Plaintiff's ability to do "heavy lifting" was supported by and consistent with other evidence in the record.

The Defendant acknowledges that the ALJ did not discuss P.A. Scerba's lifting restriction as a medical opinion under the regulations but argues the ALJ did account for it in her RFC finding. In her decision, the ALJ wrote the following:

> The claimant was also advised to avoid heavy lifting and repetitive activities at or above shoulder level [ ]. The undersigned added a limitation to frequent overhead reaching in the residual functional capacity finding to account for the claimant's right shoulder pain.

(Tr. 19). ALJ appears to have partially credited P.A. Scerba's recommendation to limit Plaintiff's capacity for overhead reaching but she ignored, without explanation, his recommendation to avoid heavy lifting.

The Defendant argues "There is no contradiction that a limitation to avoiding heavy lifting and to limit repetitive activities is consistent with the ALJ's conclusion that Plaintiff could perform medium work but could only frequently reach over head with the right upper extremity." (ECF No. 19 at 13-14). The Court does not agree. In his treatment notes, P.A. Scerba did not indicate an exact amount for the lifting restriction, and the Court is unaware of a universal definition for "heavy lifting" within the medical context, but 50 pounds certainly could be construed as "heavy lifting."[4] See Nimick v. Sec'y of Health & Hum. Servs., 887 F.2d 864, 867 (8th Cir. 1989) ("[The claimant] testified that no 'heavy lifting' was required at her prior work. The record, however, reveals that her past work as a machine operator required her to lift frequently up to 20 pounds."). But to the extent there was an ambiguity about P.A. Scerba's use of term "heavy lifting" and whether he intended to restrict Plaintiff to lifting less than 50 pounds, the ALJ was required to

---

[4] "Heavy lifting" is also not defined in the Social Security regulations. The term "heavy work" is defined in the Social Security regulations, and it requires the ability to lift up to 100 pounds. See 20 C.F.R. § 404.1567(d). But "heavy lifting" and "heavy work" are not synonymous and even if they were, an ALJ should not assume that a medical provider who uses terms such as "light," "sedentary," or "heavy," is aware of the Social Security definitions for those terms. See Patrick D. v. Saul, No. 18-CV-3052 (ECW), 2020 WL 1816378, at *6 (D. Minn. Feb. 21, 2020) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)).

resolve that ambiguity, which she did not do. SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). The found finds the ALJ failed to evaluate properly the persuasiveness of P.A. Scerba's statement restricting Plaintiff's ability to carry out physical demands.

In addition to failing to take into account P.A. Scerba's prescribed limitation, Plaintiff argues that the ALJ failed to identify <u>any</u> evidence within the record to support her conclusion that he was capable of performing medium work. In her decision, the ALJ did summarize the medial evidence in the record. She then considered opinion evidence and evaluated the credibility of Plaintiff's subjective claims of pain. (Tr. 16-22). With regard to Plaintiff's physical limitations, the ALJ discussed opinions from two medical doctors, both of whom were non-examining agency experts, as well as that of a different treating physician's assistant. The ALJ found the medical opinion provided by Plaintiff's physician's assistant, Jared Scheifer, was not persuasive. However, she did find the opinions of the two agency doctors to be persuasive to the extent that she believed they found Plaintiff was capable of performing medium work, but she rejected all of their additional postural and environmental limitations, save overhead reaching. Upon review of the record, the Court finds the ALJ erred in evaluating the persuasiveness of the two agency doctors' opinions.

David Marty, M.D., reviewed Plaintiff's medical records in January 2021. (Tr. 21, 58-59). In her decision, the ALJ wrote the following:

> David Marty, M.D., evaluated the [Plaintiff]'s medical history for the Agency in January 2021 [ ]. He limited him to a restricted range of medium-duty work activity, which is persuasive, but his additional occasional postural limitations and environmental limitations are unpersuasive since they are inconsistent with healed or healing rib fractures and mild right shoulder arthritis for the reasons discussed above. The only additional limitation that is justified is a limitation to frequent overhead reaching on the right based on the claimant's complaints of right shoulder pain.

(Tr. 21). The Court finds that the ALJ erred in her evaluation of Dr. Marty's opinion in at least two respects. First, the ALJ characterized Dr. Marty as having opined that Plaintiff was limited to

medium work activity, but with additional postural and environmental limitations. (Tr. 21, 58-59). This is not accurate.  Dr. Marty indicated Plaintiff could occasionally lift and/or carry 50 pounds, but he could frequently lift and/or carry only 20 pounds, which is less than what is required for medium work.  (Tr. 58).  Second, the ALJ found the supposed limitation to medium work activity was persuasive, but that the doctor's additional postural and environmental limitations were not persuasive because she found them to be inconsistent with Plaintiff's "healed or healing" rib fractures and mild right shoulder arthritis. (Tr. 21).  Plaintiff, however, had been diagnosed with more than mild right shoulder arthritis.  In addition to mild osteoarthritis, there was imagining in the record supporting a diagnosis of diffuse rotator cuff tendinopathy; low-grade partial-thickness articular-sided tearing of the subscapularis, anterior supraspinatus; small high-grade partial-thickness tearing involving the junctional fibers, all of which the ALJ ignored.[5]  (Tr. 590)

The ALJ also considered medical findings provided by Michael O'Day, D.O., in March 2021, (Tr. 67-68), and wrote the following:

> Michael O'Day, D.O., evaluated [Plaintiff]'s medical history for the Agency in March 2021 [ ]. He concurred with Dr. Marty by limiting [Plaintiff] to a restricted range of medium-duty work activity, which is persuasive, however, although he imposed additional limitations less restrictive than Dr. Marty, there is still no justification for a finding that [Plaintiff] is limited to only occasional climbing of ladders, ropes, or scaffolds or that he should avoid concentrated exposure to hazards. Again, Dr. O'Day did not impose any upper extremity limitations, which is the only additional limitation consistent with non-displaced rib injuries and shoulder arthritis. A limitation to frequent overhead reaching on the right is sufficient to account for any right shoulder and/or torso pain the claimant may experience while performing as a sheet metal worker.

(Tr. 21).  The ALJ found the restriction of medium work was persuasive without stating why it was consistent with and supported by the evidence in the record.  She also indicated, without any explanation, that there was "no justification" in the record for his finding that Plaintiff was limited

---

[5]Dr. Marty did not have access to this information because the imaging was completed in April 2021, after the doctor completed his review.

to only occasional climbing of ladders, ropes, and scaffolds or that Plaintiff needed to avoid concentrated exposure to hazards. (Tr. 21, 67-68).  Finally, she again characterized Plaintiff as having only arthritis in his right shoulder, and she described Plaintiff rib injuries as "non-displaced," when there is evidence in the record that they were mildly displaced.  (Tr. at 329-330).

Setting aside the fact that the ALJ rejected out of hand the agency doctors' opinions that Plaintiff had additional postural and environmental limitations, their conclusions regarding Plaintiff's ability to lift 50 pounds occasionally and 20-25 pound frequently is not supported by or consistent with the record as a whole in many significant respects. Notably, both doctors gave their opinions in early 2021 and observed "[Plaintiff] has experienced an acute injury from which he is healing and showing improvement." (Tr. at 59, 67). But subsequent treatment records reflect that Plaintiff's condition did not heal as projected.  Furthermore, both doctors summarized Plaintiff's conditions to include rib fractures, a thoracic spine, fracture, and neck arthritis – the conditions upon which the ALJ based her disability decision – but additional imaging done after the two doctors formed their opinions showed diffuse rotator cuff tendinopathy and partial thickness tearing of multiple tendons in his shoulder, including some high-grade tearing involving the junctional fibers. (Tr. at 590).  Furthermore, after MRI imaging was taken, Plaintiff's medical providers escalated Plaintiff's treatment – he received cortisone injections, more physical therapy, and surgery was scheduled –treatment that the doctors did not take into account.  Later, it was also recommended that Plaintiff "avoid heavy lifting," and one medical provided opined that he could not lift more than 10 pounds, limitations about which the doctors were unaware. (See Tr. at 629, 664, 667-668).  In short, Drs. Marty's and O'Day's opinions are not supported by medical imagining done on Plaintiff's shoulder, and they are inconsistent with the treatment notes from Plaintiff's other medical providers, who noted on a number of occasions that Plaintiff had lifting restrictions. The ALJ errored in that she failed to explain why she continued to rely on the two

doctors' outdated opinions regarding Plaintiff's ability to lift in light of the subsequent MRI findings and the fact that there were conflicting opinions from his treating medical providers that undermined the agency doctors' assessments.

The Court finds that the ALJ did not comply with the regulations when evaluating the medical opinions in the record.  In addition to mischaracterizing Plaintiff's medical records and Dr. Marty's opinion itself, in evaluating the medical opinions the ALJ failed to adequately address the factors found in 20 C.F.R. § 404.1520c(a)-(c).  For example, when evaluating Dr. Marty's opinion, she summarily wrote that his opinion regarding Plaintiff's ability to perform supposed medium work was persuasive "for the reasons discussed above," which is not enough, especially in light of the fact that Dr. Marty did not opine that Plaintiff was capable of frequently lifting 25 pounds.  (Tr. 21).  "[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do."  Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting Walker v. Comm'r, Soc. Sec. Admin., 911 F.3d 550, 554 (8th Cir. 2018)).   As for Dr. O'Day's opinion, she noted that his finding that Plaintiff could do medium work was "persuasive," but "there is still not justification" for his findings that Plaintiff had additional postural and environmental limitations.  (Tr. 21).  And she stated, with no citations to the record or medical authority, that "upper extremity limitations . . . is the only additional limitation consistent with non-displaced rib injuries and shoulder arthritis." (Id.)   In addition to being an unsupported opinion, this was an incomplete account of Plaintiff's diagnoses.

In sum, in evaluating the persuasiveness of the medical opinions, the ALJ did not discuss the factors as required by 20 C.F.R. § 404.1520c(b)(2).  The ALJ did not address supportability and devoted very little to the discussion of consistency, which was more than just a drafting error.  Id. ("failure to comply with SSA regulations is more than a drafting issue, it is legal error"); Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003) (contrasting a "mere

drafting oversight" with the "failure to follow . . . [t]he Commissioner['s] duly promulgated regulations").

Finally, with regard to the medical evidence, the ALJ acknowledged Plaintiff did not enjoy significant benefit from physical therapy, pain medications, or cortisone injections and was slated for surgery shortly after his disability hearing. (Tr. at 20).  But the ALJ did not take into account the fact that Plaintiff was scheduled for surgery in determining Plaintiff's RFC.  The ALJ wrote "[t]here is nothing persuasive in the record to suggest that the claimant's shoulder pain will not resolve within one year after the contemplated surgery and nothing convincing exists in the treatment notes to suggest that his shoulder pain is severe enough to prevent him from returning to his past relevant occupation as a sheet metal worker." (Tr. at 20).  In reaching this conclusion, the ALJ speculated as to what the outcome of Plaintiff's future surgery would be. She concluded Plaintiff has the ability to perform medium work based on her projection that his shoulder surgery would be successful and resolve his condition, an inference the ALJ was not permitted to draw. See Koch v. Kijakazi, 4 F.4th 656, 665 (8th Cir. 2021) (explaining an ALJ improperly inferred that the claimant's recent surgery improved pain symptoms such that the claimant was not disabled); see also Noerper, 964 F.3d at 746–47 (an ALJ "may not simply draw [her] own inferences about plaintiff's functional ability from medical reports.") (citing Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017)).

In evaluating a claimant's RFC, the ALJ need not "rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (quotation omitted). Furthermore, an ALJ is not compelled to adopt an unsupported medical opinion, even if it comes from a treating source. See 20 C.F.R. § 404.1513(a)(2); 404.1520c.  Ultimately, it is the ALJ's role to determine a claimant's RFC, but an RFC must be supported by some medical evidence. Mabry v. Colvin, 815 F.3d 386, 391 (8th Cir.

2016).  Here, the Court finds that the ALJ did not evaluate properly the medical opinions of P.A. Scerba and Drs. Marty and O'Day, and her findings regarding Plaintiff's lifting abilities in the RFC are not supported by medical evidence in the record.

### 2.     The ALJ's evaluation of subjective complaints of pain

In evaluating Plaintiff's RFC, the ALJ also indicated that she did not find Plaintiff's subjective complaints of pain to be credible.  The ALJ pointed to the fact that Plaintiff quit working in May 2020, before his fall, for reasons other than disability. (Tr. 17, 312).  Stopping work for reasons other than the alleged disability can undermine a claimant's allegation that his impairments are disabling.  Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005).  However, Plaintiff indicated on his application that he stopped working in May 2020, on account of a "work stoppage due to COVID-19," and then a month later, in June 2020, he experienced a fall and was unable to work due to his physical impairments. (Tr. 198).  In her decision, the ALJ neglected to take into account when assessing Plaintiff's credibility that after having labored as a sheet metal worker for nearly 35 years, Plaintiff stopped working during the height of the COVID-19 pandemic, when millions of American workers were at home and out of work, and that his accident occurred during this national work-stoppage.

The ALJ also found Plaintiff's reported daily activities were "inconsistent with a finding of disability." (Tr. 18).  In a function report from December 2020, Plaintiff reported he lived alone and helped his elderly parents with daily chores and doctors' appointments. (Tr. 216).  He stated that he prepared simple meals and performed light cleaning but did no yardwork.  Plaintiff indicated that could drive and go out alone, although he had difficulty twisting and getting in and out of the car. He noted that he could not lift the laundry, and that his daughter helped clean and with maintenance.  He also noted that he could walk less than a mile without requiring a rest break, although before his injury he ran and worked out every day, which he could longer do. (Tr. 218-

19). In a function report dated February 2021, Plaintiff reported that he was living in a house with his daughter. (Tr. 235). In this report, Plaintiff stated that he spent most of his time in a recliner. (Tr. 236). He cared for a cat with the help of his daughter; could prepare simple meals, wash laundry, shop for his needs, and walk up to half a mile (Tr. 237-40).

The Defendant argues that the ALJ properly found that Plaintiff's self-reported level of independent functioning was inconsistent with a finding of disability.  The Defendant's argument is not persuasive. First, the issue was not whether Plaintiff's daily activities were inconsistent with a finding of disability, but rather whether they are inconsistent with his claims of impairment.  In calculating the RFC, a claimant's reported daily activities are one factor the ALJ must consider when evaluating the claimant's testimony and subjective limitations. See Swarthout v. Kijakazi, 35 F.4th 608, 612 (8th Cir. 2022) ("While daily activities alone do not disprove disability, they are a factor to consider in evaluating subjective complaints of pain."); Leckenby v. Astrue, 487 F.3d 626, 634 (8th Cir. 2007) ("In evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others over a period of time and the frequency, appropriateness, and independence of the activities must also be considered.").

Second, Plaintiff did not claim that he could not do light or sedentary work, or no work at all.  Rather, Plaintiff claims that he cannot perform medium work.  More specifically, that he has more restrictive lifting restrictions than occasionally lifting 50 pounds and frequently lifting 25 pounds, in addition to postural limitations, such as no twisting or crouching. There is nothing inconsistent between Plaintiff's self-reported activities and Plaintiff's claim that due to his physical impairments, he is incapable of performing medium work.  In Tilley v. Astrue, the Eighth Circuit examined whether an ALJ had properly determined that a claimant had retained the ability to do light work and found, "[a plaintiff's] limited ability to complete light housework and short errands

20

does not mean [he or] she has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'"  580 F.3d 675, 681 (8th Cir. 2009) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)). See also Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) ("[I]t is well-settled law that a claimant need not prove she is bed-ridden or completely helpless to be found disabled.") (quotation omitted). There is nothing in Plaintiff's self-reported daily activities that are inconsistent with his claim that he cannot frequently lift 25 pounds and occasionally 50 pounds day in and day out.

### VI.    Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'"  Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (quoting Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)).  The Court finds that it does not in this case.  For the reasons set forth above, the Court finds that the ALJ did not follow the Social Security regulations and controlling law in evaluating medical opinions in the record.  The Court further finds her RFC determination, particularly her findings regarding Plaintiff's ability to lift despite his physical impairments, is not supported by medical evidence. Finally, the ALJ's findings regarding the supposed inconsistency between Plaintiff's claims of impairment and his reported daily activities are not supported by the record. Therefore, the Court remands this matter to the Commissioner for further proceedings consistent with this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.


*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this  26th   day of March, 2024.